**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DIANE AMES,** | ) | |
| | ) | |
| | ) | |
| *Plaintiff*, | ) | **08 CV 6060** |
| **v.** | ) | |
| | ) | |
| **HOME DEPOT U.S.A., INC., a Delaware** | ) | **Honorable David H. Coar** |
| **corporation,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant*. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before this Court is a Motion for Summary Judgment filed by Defendant Home Depot, Inc. against Plaintiff Diane Ames. Home Depot seeks summary judgment in its favor on the issue of Plaintiff's claims under the Family Medical Leave Act, 29 U.S.C. § 2601, and the Americans with Disabilities Act, 42 U.S.C. § 12101. For the reasons stated below, Defendant's Motion for Summary Judgment is GRANTED.

**FACTS**

Plaintiff Diane Ames claims that Home Depot: (1) interfered with her rights under the Family and Medical Leave Act ("FMLA") (Amended Complaint ¶¶ 34-42); and (2) terminated and failed to accommodate her in violation of the Americans with Disabilities Act ("ADA") (Amended Complaint ¶¶ 43-53). Ames, now 49, was hired by the Oswego, Illinois Home Depot

Store on November 22, 2001 as a Freight Team Associate. (Defendant's Rule 56.1 Statement of Material Facts ("Def. SOF") ¶ 4)  In August of 2002, Plaintiff was promoted to a Freight Team Supervisor (Def. SOF ¶ 5.).  In July of 2005, Plaintiff laterally transferred to the Garden/Seasonal Department. (Def. SOF ¶ 6.) Thereafter, in May of 2006, Plaintiff laterally transferred to the Lumber Department.  (Def. SOF ¶ 7.)

During Ames' orientation, she received a copy of the Associate Guide Code of Conduct. (Def. SOF ¶ 8.)  The Code of Conduct lists Major Work Rule Violations, which are terminable upon a first offense. (Def. SOF ¶ 9.)  One of the listed Major Work Rule Violations terminable upon a first offense is "[h]aving detectable levels of alcohol, drugs, or non-prescribed controlled substances as determined by a drug/alcohol test." (Def. SOF ¶ 10.)

On Friday, September 15, 2006, Diane came to the store on her day off to speak to Store Manager Mike Mahon about needing assistance to deal with her alcohol problem.  At that point, Ames' work performance had not suffered, but she was aware that she would need help, and believed Home Depot's Employee Assistance program ("EAP", also known as the "CARE program") would offer the help she needed.  (Plaintiff's Rule 56.1 Statement of Material Facts ("Pl. SOF") ¶ 5.)  In accordance with Home Depot's Drug and Alcohol Rehabilitation policy, Ames was immediately removed from Home Depot's work schedule until she received a treatment plan, obtained a return-to-work authorization from an EAP provider, and passed a return-to-work drug and alcohol test.  (Pl. Dep. 152; Ex. 6 at 3; Ex. 21 at 1-2).  Plaintiff received pay for her time off.  (Pl.  Dep. 155, 163).

On September 23rd, Ames came to work and signed, without objection, an Employee Assistance Agreement ("EAA"), officially enrolling in the EAP. (Ex. 7; Pl. Dep. 153-55.)  By signing the EAA, Plaintiff agreed to the following:

> I will be subject to periodic drug and/or alcohol testing during the remainder of my employment at Home Depot whether the Company has reasonable suspicion or not to believe drug or alcohol abuse occurred at work or has affected my work performance.
>
> If I refuse a required drug and/or alcohol test or fail a drug and/or alcohol test at any time during the course of my employment at Home Depot, I will be immediately terminated. (Ex. 7)

Ames admits that she wanted help, read the EAA before she signed it, and did not object to signing the EAA. (Def. SOF ¶ 20; Pl. Dep. 154-55.)

In mid-October, Ames was cleared by her EAP Case Manager Clark Burton to return to work after she passed a drug and alcohol test. (Def. SOF ¶ 21; Pl. Dep. 167-78.) Ames returned to work on October 18th, 2006. Shortly after, Mahon left the company and Jose Peña became the Oswego Store manager. (Def. SOF ¶ 23.)

On November 18th, 2006, Ames was pulled over at 7:35 a.m. and arrested for driving under the influence of alcohol. (Pl. Dep. 180-82.) Since Ames was scheduled to work that day, she called the store and took a personal day without attendance penalties. (Def. SOF ¶ 26.) Ames' DUI was reported in the local newspaper and brought to Human Resources Manager Gretchen Gallois' attention. (Def. SOF ¶ 27.) Gallois called Burton and informed him of the DUI arrest. Burton attempted to contact Ames to advise her that her DUI arrest put her in noncompliance with the terms of her EAA. (Def. SOF ¶ 28.) After a number of failed attempts to reach Ames by phone, Burton sent her a letter on December 6th, informing her that she had until December 15th to set up an appointment at a full service alcohol treatment facility for an evaluation to restore her compliance. (Def. SOF ¶ 30.) Burton's records reflect that he spoke

with Plaintiff on December 7th, and gave her until December 18th to get the evaluation appointment scheduled. (Def. SOF ¶ 32.)

On December 8th, Ames approached Peña and asked him for "assistance with her schedule" so that she could attend her preferred Alcoholics Anonymous ("AA") meetings, and for information on a medical leave of absence. (Def. SOF ¶ 33.) Peña asked Ames for additional documentation from her doctor and regarding the AA schedule. (Pl. Def. 198.)

On December 12th, Ames gave Peña an AA schedule and a note from her primary care physician, Dr. Dorman (Def. SOF ¶ 36.) Dorman's note states: "Diane L. Ames has been under my care. She has been referred by me to Carol Russell, a licensed clinical social worker, and she is seeing Dr. John Zhang for psychiatric and medication management." (Ex. 9.) The note does not mention any medical condition, treatment, need for accommodation, or need for leave of absence. *Id*. Ames' conversation with Peña was short and simply entailed handing off the AA schedule and Dr. Dorman's note. (Def. SOF ¶ 39.)

Within a couple weeks of this date, Ames had a conversation with Burton. She told him that she was working on setting up an appointment for her EAP-mandated evaluation before the end of January. (Pl. Dep. 215-16; Ex. 22 at 5.) Ames attributed the delay to difficulties with her insurance plan and the challenge of finding a doctor that simultaneously met the counseling requirements set by the court for her DUI. (Pl. Dep. 215-16; Ex. 22 at 5.)

Ames' next conversation with Peña occurred on December 20, 2006, in the presence of co-worker and friend Jack Thomas. (Def. SOF ¶ 42.) Co-worker Brandy Hardekopf stood outside the office during the conversation. (Pl. SOF ¶ 20.) At the meeting, Plaintiff discussed an array of problems, including the breakdown of her marriage and subsequent divorce (Pl. Dep. 225-26), the recent arrest of her son on drug charges (Pl. Dep. 226), unfair treatment by prior

supervisors (Pl. Dep. 226), her concern that she had been denied other supervisor positions due to a perceived relationship between her and Jack Thomas (Pl. Dep. 228), whether the company would pay for her EAP-mandated evaluation (Pl. Dep. 229), and the inadequacy of her current alcohol treatment program (Pl. Dep. 228).  During the conversation, Ames expressed that "I didn't know that I had to have a full leave of absence or just a partial or what my options were." (Pl. Dep. 228.)

In Ames' words, "I wasn't – when I went in to see Jose on the 20th, I wasn't necessarily asking for I have to leave right now, an immediate leave of absence.  I wanted to know – I have got to do something.  I don't know – I don't know how to work it out, but I need to find out what I need to do so that I can go to – so I can start an outpatient program or a program that's more intense than visiting my counselor twice a week and going to AA. It's not working." (Pl. Dep. 283.)

Peña ended the meeting by stating that he would speak with Gallois, look into the issue of who was required to pay for the EAP-mandated evaluation and any treatment thereupon, and get back to her.  (Def. SOF ¶ 44.)  Although Ames told Peña that she did not like or trust Gallois and did not want Gallois involved, Peña replied that he was required to speak to her.  (Def. SOF ¶ 47-48.)  Ames left the meeting believing Peña was sympathetic toward her situation.  (Def. SOF ¶ 48.)  Peña did not say when he would be getting back to Ames, and Plaintiff did not ask. (Def. SOF ¶ 46.)

As previously scheduled, Ames reported to work at 2:00 p.m. on December 23rd. (Def. SOF ¶ 53.)  After she began her shift, she approached Peña to ask if there was anything he wanted done.  (Def. SOF ¶ 55.)  Peña asked Ames to accompany him to his office.  (Def. SOF ¶ 58.)  Peña testified that Assistant Store Manager Eric Gray had informed him earlier that Ames

was acting differently and smelled of alcohol (Peña Dep. 131-32.), although Ames denies seeing Gray until later. (Ex. 13.) During their conversation, Peña thought Ames was less responsive than normal, smelled of alcohol, and slurred her speech, (Ex. 25.) He therefore called Gallois, who agreed that Peña should send Ames for an alcohol test. (Def. SOF ¶ 61.)

Ames was driven to the testing facility by a coworker, and told not to return to work until after the results were issued. (Def. SOF ¶ 63.) There, Ames' blood was drawn for analysis. (Def. SOF ¶ 64.) On December 29th, the alcohol testing laboratory reported a positive alcohol test. (Def. SOF ¶ 65.) Gallois was the first to learn of the positive result. (Def. SOF ¶ 66.) She informed Peña and District Human Resources Manager Mike Wong. (Def. SOF ¶ 66-67.) The decision was made to terminate Plaintiff based on the violation of Home Depot's Substance Abuse Policy. (Def. SOF ¶ 67.) Sometime between December 29th and 31st, Peña set up a meeting on January 2nd to inform Ames of the termination decision. (Def. SOF ¶ 68-69.)

After Ames' alcohol test on December 23rd, her anxiety level began to build because she knew it was a terminable violation of Company policy to have alcohol in her system at work. (Def. SOF ¶ 70.) After Christmas, Plaintiff began drinking more, and her anxiety about a positive alcohol test result increased further. (Def. SOF ¶ 71.)

On January 1st, unbeknownst to Home Depot, Ames called Thomas, who drove her to Provena Mercy Hospital, where she checked herself in. (Def. SOF ¶ 73.) Ames was discharged the next day with instructions to start an intensive outpatient alcohol rehabilitation program. (Def. SOF ¶ 74.) Because of her one-day hospital stay, Ames failed to show up for her meeting with Peña on January 2nd. (Def. SOF ¶ 75.) On January 11, 2007, Diane received a letter sent overnight on January 10, 2007, terminating her employment, effective December 23rd, based on her violation of the Company's Substance Abuse Policy. (Pl. SOF ¶ 39.)

Plaintiff admits that her work performance was never affected by, nor was she ever incapacitated because of her alcohol problem. (Def. SOF ¶ 79; Pl. Dep. 106-07, 129.)

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must set forth specific facts (a "scintilla of evidence" is insufficient) demonstrating that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Anderson*, 477 U.S. at 252.

When reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Schuster v. Lucent Tech., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003). At summary judgment, the "court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

## ANALYSIS

## I.  FMLA Claims

The Family Medical Leave Act of 1993 ("FMLA") gives eligible employees the right to twelve work-weeks of unpaid leave during any twelve-month period for specified reasons.  *See* 29 U.S.C. § 2612.  The Act makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by its provisions.   29 U.S.C. § 2615(a)(1); *Lewis v. Sch. Dist. #70*, 523 F.3d 730, 741 (7th Cir. 2008).

The FMLA creates two types of claims: interference claims, in which an employer denies or otherwise interferes with an employee's substantive rights under the FMLA, and retaliation claims, in which an employer discharges or discriminates against an employee because she engaged in activity protected by the FMLA.  *See* 29 U.S.C. § 2615(a).  Ames argues that Home Depot's failure to allow her to take an unpaid leave and its subsequent termination of her employment interfered with her rights under the FMLA.  (Compl. At ¶ 39.).  As elaborated in her summary judgment briefs, Ames asserts that she was not only denied the option of taking time off, but was also terminated because of her request for leave.

Home Depot contends that because Ames did not include the word "retaliate" in the language of her Complaint, she cannot argue a retaliation claim at summary judgment.  The Court nevertheless considers Ames' allegations of retaliation, for the Complaint clearly characterizes Ames' termination as a violation of the FMLA and challenges Home Depot's reasons for dismissal.  (Compl. At 23, 26, 29, 39.)  Even if Ames had not accurately grasped the nature of her claim at the pleading stage, "[h]aving specified the wrong done to [her], a plaintiff may substitute one legal theory for another without altering the complaint."  *Ridings v. Riverside*

*Medical Center*, 537 F.3d 755, 764 (7th Cir. 2008) (citing *Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997)) (finding that a trial court may appropriately consider a theory raised for the first time in plaintiff's summary judgment brief). The Court therefore addresses these claims in turn.

## A. FMLA Interference

To prevail on an FMLA interference claim, an employee need only show that her employer deprived her of an FMLA entitlement. *Burnett v. LFW Inc*., 472 F.3d 471, 477 (7th Cir. 2006). No showing of ill intent is required. *Id.* Specifically, the employee must establish that (1) she was eligible for the FMLA's protections, (2) her employer was covered by the FMLA, (3) she was entitled to leave under the FMLA, (4) she provided sufficient notice of her intent to take leave, and (5) her employer denied her FMLA benefits to which he was entitled. *Id.*

Home Depot argues that Ames has not satisfied the third, fourth, and fifth elements of an interference claim, in that she was not entitled to FMLA leave, nor did she provide Home Depot with adequate notice of her intent to take leave. Ames argues that because these issues remain genuine issues of material fact for a jury to decide.

## 1. Entitlement to FMLA Benefits

The parties dispute whether or not Ames had a serious health condition entitling her to FMLA benefits. Home Depot also puts forward an unanswered argument that Ames' alcoholism did not render her unable to perform her job, a further requisite for FMLA leave.

An individual is entitled to FMLA leave if she has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D); *see also* 29 C.F.R. §825.112(a)(4). The FMLA defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

Under part (B) of this provision, "treatment" includes evaluations of the condition as well as examinations to determine if a serious health condition exists. 29 C.F.R § 825.113(c). For the purposes of Ames' claim, the requisite treatment must also involve a period of incapacity of more than three consecutive, full calendar days, followed by additional treatment by a health care provider. § 825.115(a)(1)-(5); *see also Haefling v. United Parcel Serv., Inc.*, 169 F.3d 494, 499 (7th Cir. 1999).[1] "Incapacity" is defined as the inability to work or perform regular daily activities due to a serious health condition, or related treatment or recovery. 29 § 825.113(b).

Ames argues that she had a serious health condition while in the employ of Home Depot because her EAP-mandated evaluation qualified as "treatment," thus entitling her to FMLA benefits. This assertion would be accurate if Ames' evaluation addressed a period in which she could not work or perform daily activities for three consecutive calendar days.

Yet, Ames admits to Home Depot's Rule 56.1 Statement that her work performance was

---

[1] Alternatives to the three-day requirement do not apply to Plaintiff. Ames can avoid the requirement by showing one of the following: any incapacity due to pregnancy or prenatal care, § 825.115(b); any incapacity due to chronic conditions requiring periodic visits to a health care provider over an extended period of time, e.g. asthma, diabetes, or epilepsy, § 825.115(c)(1)-(3); permanent or long term incapacity due to conditions for which treatment may be ineffective, e.g. the terminal stages of a disease, § 825.115(d); or multiple treatments for restorative surgery or to address a condition that would likely result in a three-day period of incapacity in the absence of medical intervention, e.g. chemotherapy for cancer, physical therapy for arthritis, or dialysis for kidney disease, § 825.115(e)(1)-(2). Ames does not claim to suffer from any of these conditions. Even if she did, she would not satisfy three of the four provisions because, as the Court discusses later, she was never incapacitated by her alcoholism. As to the final provision, Ames never alleges that she required multiple treatments for her alcoholism to prevent a likely incapacity of more than three consecutive days. Her testimony and admissions simply indicate that her alcohol problem never incapacitated her. Ames therefore fails to create an issue of fact for this matter.

never affected by her alcohol problems, nor was she ever incapacitated because of her alcohol problems. (Def. SOF ¶ 79.)  In her deposition, Ames reiterates, "I was stressed, but my performance never dropped." (Pl. Dep. 107.)  In addition, "[m]y work wasn't affected."  (Pl. Dep. 106-07.)  When asked twice if she was incapacitated by her alcoholism, Ames responded in the negative, and made no mention any difficulties performing her daily activities.  (Pl. Dep. 107, 129.)  Far from disputing this point, Ames' Response to Home Depot's Motion reinforces it. (Doc. [39] at 14) ("Diane was meeting Home Depot's expectations up until her last day of employment.").  Nor does Ames submit any testimony or affidavits from health care providers attesting to any incapacity.  Because there is no evidence in the record to suggest that Diane suffered from any prior or foreseeable periods of incapacity, such that she was unable to work or participate in daily activities, no reasonable fact finder could conclude that Ames' alcoholism qualifies as a serious health condition due to continuing treatment under the FMLA.

Even if Ames' alcoholism qualified as a serious health condition, her timing is off. "Substance abuse may be a serious health condition if the conditions of §§ 825.113 through 825.115 are met.  However, FMLA leave may only be taken for treatment for substance abuse by a health care provider or by a provider of health care services on referral by a health care provider." 29 CFR § 825.119.  Consequently, absences due to an employee's substance use, rather than for treatment, do not qualify for FMLA leave. *See Darst v. Interstate Brands Corporation*, 52 F.3d 903, 908 (7th Cir. 2008).  While the term "treatment" under the FMLA includes evaluations of the condition, "treatment" for the purposes of the Act is not initiated by preparatory actions like calling to make an appointment. *Id.* At 911.  In sum, an employee suffering from alcoholism that qualifies as a serious health condition is only entitled to FMLA leave when she is receiving treatment for her addiction, not before or after, when she is broadly

suffering from her condition.  *See id.* at 909.

Although it is not entirely clear from the pleadings or briefs, Ames appears to claim that she was denied immediate FMLA leave throughout the month of December, beginning with her initial conversation with Peña for schedule accommodations, and ending with Plaintiff's final day on December 23rd, when she tested positive for alcohol.  Implicit in Ames' argument is the notion that, had she been permitted to take a day off on December 23rd, she would not have arrived to work with alcohol in her system, and thus would have avoided the positive drug test that forms the alleged basis for Home Depot's termination decision. ( Pl. SAF ¶ 27.)

While an employee is entitled to FMLA leave for treatment for alcoholism (assuming that it qualifies as a serious health condition), the record contains no evidence demonstrating that Ames planned on being evaluated or treated until January.

> A. I told [Burton] that I was going to be talking with the store manager at Home Depot to try and arrange to work around the schedule so that I could get the time off and that he was asking me when; and I said I would like to be in the program before the end of January, sometime in January I would go in for an evaluation and find out exactly what I needed. (Pl. Dep. 79.)

> A: [Burton] was requesting to know when the appointment was scheduled and his appointment had not been scheduled yet.
> Q. Okay, the answer is no, you never did that?
> A. I never called him –
> Q. Is that what you're saying?
> A. No, I couldn't have called him with an appointment date because I didn't know what that was yet.
> Q. Okay.
> A. I did tell him I was working on it and I would get it resolved, I would have the appointment date set up before the end of January.
> Q. Before the end of January?
> A. I told him that's what I was shooting for.
> Q. Did you have that appointment date set up on or before December 23rd?
> A. No.
> . . .

Q. Okay. So since you didn't have the appointment set up on or before December 23rd, it would stand to reason that you never called him back on or before the 23rd to convey the information to him, am I correct about that?
A. To tell him that I had an appointment scheduled, no. (Pl. Dep. 216-17)

Home Depot did nothing to prevent Ames from scheduling her evaluation earlier or to interfere with her scheduling process. Rather, Ames attributed the delay to complications with finding doctors that simultaneously fulfilled court requirements for her DUI, yet were covered by her insurance plan, as she was concerned about costs. (Pl. Dep. 213-15.) Thus, even if Ames had qualified as having a serious health condition, she did not plan on seeking treatment until January and was therefore not entitled to FMLA leave until such time. *See Darst*, 52 F.3d at 908.

In Plaintiff's Response to Defendant's Motion for Summary Judgment, Ames accepts that she cannot demonstrate the requisite period of incapacity, (Doc. [39] at 8-9), and so turns to a perplexing alternative argument. Ames now claims that the purpose of her alleged requests for leave was a night of inpatient care and subsequent related treatment, as supposedly recommended by Ames' CARE counselor, and ultimately taken on January 1st. (Doc. [39] at 8.) In making this assertion, Ames seeks to satisfy part (A) of 29 U.S.C. § 2611(11), which defines a serious health condition as one involving "inpatient care in a hospital, hospice, or residential medical care facility."[2]

As a preliminary matter, Ames' brief contradicts her admissions, her testimony, and the record. In response to Home Depot's Rule 56.1 Statement, Ames admits that on December 8th, "Plaintiff approached Peña and asked him for 'assistance with her schedule' so that she could attend her preferred AA meetings, and for information on a medical leave of absence." (Def.

---

[2] Under the FMLA, "inpatient care" means "an overnight stay in a hospital, hospice, or residential medical care facility, including any period of incapacity as defined in § 825.113(b), or any subsequent treatment in connection with such inpatient care." 29 C.F.R § 825.114.

SOF ¶ 33.)  Ames further admits that, during her second conversation with Peña, they discussed her personal and work-related problems, her drinking problem, the EAP-mandated evaluation, and a possible leave of absence.  (Def. SOF ¶ 43.)  At her deposition, Ames confirms that she sought information for schedule accommodations for AA meetings, (Pl. Dep. at 195-96), and discussed with Peña the EAF-mandated evaluation, (Pl. Dep. at 79), which she described twice as an "intensive outpatient program," (Pl. Dep. at 196, 226-27).  At most, Ames stated that on December 20, "I told [Peña] that I had -- I didn't know exactly what kind of program I needed . . . I knew I needed something more intensive," (Pl. Dep. 228.), but later adds that when she spoke to him, "I wasn't necessarily asking for I have to leave right now, an immediate leave of absence. . . . I need[ed] to find out what I need to do so that I can go to – so I can start an outpatient program or a program that's more intense than visiting my counselor twice a week and going to AA. It's not working." (Pl. Dep. 283.)

All of this is a far cry from requesting leave for inpatient treatment, or acting on a heretofore unmentioned and unverified counselor recommendation for inpatient care.  It follows that Home Depot did not interfere with any attempts to enter inpatient care, as no such attempts were made.  Moreover, the record does not contain any evidence supporting the suggestion that Ames planned, desired, or required her January 1st trip to Provena Mercy Hospital while in Home Depot's employ.  To the contrary, Ames testified that checking into Provena Mercy was a spontaneous decision, as opposed to a premeditated one for which she had previously sought leave, made after consulting her friend that day.

> A. I knew after I was sent for that drug test that they were going to use that – either that, that exact point or at some point to fire me and I was devastated and I

was drinking and I just wanted it to stop. And I knew I had to do something
drastic, and I didn't know what that was. And --
. . .
A: And I called my friend, Jack, and I told him I was lost and I was scared and he
came over and he picked me up and we drove around for about three hours and
we talked. And he said, "I can't tell you what to do. I can't tell you what I think
you should do. What do you want me to do? What do you want?" And I said I
didn't know. I said, "Check me in because that's the only thing I know to do.
Q. Okay.
A. And he drove me there, and then he called my parents, and he told my parents
that I was in trouble and I needed them and they got in the truck and came up. (Pl.
Dep. At 259-60.)

Assuming for the sake of argument that Ames qualified as having a serious

medical condition on account of her hospital stay, her inpatient care claim suffers from

the same timing defects as her continuing treatment claim. Ames would be entitled to

FMLA leave only for the time she spent in inpatient care, not for the time in which she

was afflicted with alcoholism in general. *See Darst*, 52 F.3d at 908. Yet, Ames was not

admitted to Provena Mercy until a week after she was terminated. As such, Ames would

not have possessed any exercisable FMLA rights to interfere with during her time at

Home Depot, and thus presents no issue of fact for a juror to decide.

In order to manufacture a disputed issue of material fact on this subject, Ames belatedly

submits a supplemental affidavit with her Response, stating that "[t]he reason I did not attend the

inpatient portion of the treatment program prior to January 1, 2007 is because I did not have

permission to miss work and, prior to that date, I was afraid that missing work for the program

without permission would mean losing my job." (Pl. Aff. ¶ 10). As a rule, however, a party

cannot avoid summary judgment by submitting an affidavit that conflicts with earlier deposition

testimony. *See Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293 (7th Cir. 1993); *Diliberti v. U.S*,

817 F.2d 1259, 1263 (7th Cir. 1987) ("a party cannot create a genuine issue of fact by submitting

an affidavit containing conclusory allegations which contradict plain admissions in prior

deposition or otherwise sworn testimony."); *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 861-62

(7th Cir. 1985); *Miller v. A.H. Robins Co.*, 766 F.2d 1102, 1104 (7th Cir. 1985).[3]  To the extent

that Ames' affidavit contradicts her earlier deposition testimony, then, this Court disregards its

contents.  Given the evidence legitimately on record, a reasonable fact finder would not be able

to conclude that Ames was entitled to FMLA leave in December for heaving a serious health

condition involving inpatient treatment.

 Finally, the existence of a serious health condition aside, Ames still offers nothing to

contradict the fact that her alcoholism never rendered her unable to perform her job functions, a

requirement for entitlement to FMLA benefits.  *See Caskey v. Colgate-Palmolive Co.*, 535 F.3d

585, 589 (7th Cir. 2008); *Burnett v. LFW Inc.*, 472 F.3d 471, 478 (7th Cir. 2006).  To reiterate,

an individual is entitled to FMLA leave if she has a "serious health condition that makes the

employee unable to perform the functions of the position of such employee." 29 U.S.C. §

2612(a)(1)(D); *see also* 29 C.F.R. §825.112(a)(4) ("the functions of the employee's job").  An

employee is unable to perform the functions of her job where a health care provider finds that

she cannot work at all or is unable to perform any of the essential functions of her position under

the Americans with Disabilities Act, 42 U.S.C. 12101 ("ADA"), and its regulations, 29 C.F.R.

1630.2(n).

 As examined above, Ames admits in her Rule 56.1 response that her work performance

---

[3] The Seventh Circuit makes exceptions to this rule in only a limited number of circumstances.  These include the following: "clarification for a confusing deposition question, circumstances indicating a lapse of memory, relevant new information discovered after the original testimony, or ambiguous or incomplete earlier testimony. Consequently, a court must examine the particular circumstances of a change in testimony to see whether it is plainly incredible or merely creates a credibility issue for the jury."  *Patton v. MFS/Sun Life Financial Distributors, Inc.*, 480 F.3d 478 (7th Cir. 2007) (citing *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 759 (7th Cir. 2006); *Adelman-Tremblay v. Jewel Co., Inc.*, 859 F.2d 517, 520-21 (7th Cir.1988); *Aviles v. Cornell Forge Co.*, 183 F.3d 598, 602-03 (7th Cir.1999); *Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1007 (7th Cir.1999); *Bank of Illinois v. Allied Signal Safety Restraint Systems*, 75 F.3d 1162, 1169-71 (7th Cir. 1996)).  None of these circumstances apply to Ames.

was never affected by her alcohol problems. (Def. SOF ¶ 79.)  She further testified that "my performance never dropped," (Pl. Dep. 107), and that "[m]y work wasn't affected," (Pl. Dep. 106-07).  She responded negatively to two inquiries as to whether she was incapacitated by her alcoholism, (Pl. Dep. 107, 129), and emphasizes her fitness for work in her brief.  (Doc. [39] at 14) ("Diane was meeting Home Depot's expectations up until her last day of employment. . . . [she] never allowed her battle with alcoholism to interfere with her work.").  Ames also failed to submit any records from a health care provider attesting to her inability to work.[4]  As such, a reasonable jury would be compelled to find that Ames' alcoholism did not render her unable to perform any of her position's essential functions.

Where an employee does not assert that FMLA leave was mandated because a health condition rendered her "unable to perform the functions of" her position, she fails to demonstrate the existence of a genuine issue of material fact on that point.  *See Lottinger v. Shell Oil Co.*, 143 F.Supp.2d 743, 771 (S.D. Tex. 2001) (plaintiff's testimony that his work performance was never adversely affected by his alleged depression or alcoholism indicated that he was not unable to perform the functions of his position, as necessary to qualify for FMLA leave); 29 U.S.C. § 2612(a)(1)(D); 29 C.F.R. §825.112(a)(4).  Summary judgment is thus warranted on the subject of Ames' entitlement to FMLA benefits.

### 2. Notice and Denial

Despite Ames' inability to satisfy the first element of a prima facie case for FMLA interference, the parties focus much of their argument on the issue of notice.  Although the Court need not determine the issue, it notes that it is a considerably more straightforward one.

---

[4] The FMLA also states that "[a]bsence from work for medical treatment for a serious health condition constitutes an inability to perform the essential functions of one's job.  29 C.F.R. §825.123.  Aside from not having a serious health condition, Ames never absented herself from work to receive medical treatment.

"When requesting unpaid leave, the employee need not mention the FMLA. In fact, the employee can be completely ignorant of the benefits conferred by the Act: it is sufficient notice if the employee provides the employer with enough information to put the employer on notice that FMLA qualifying leave is needed." *Stoops v. One Call Communications*, 141 F.3d 309, 312 (7th Cir. 1998). While Ames never invoked the FMLA, she detailed her alcohol problems to Peña at length and indicated that she thought medical leave might be necessary in the future. (Pl. Dep. 225-28.) In doing so, she informed Home Depot of a probable basis for FMLA leave, which Ames potentially could have been entitled to after entering inpatient care or, upon a showing of incapacity, scheduling her EAP-mandated evaluation. As such, a jury could reasonably find that the conversation with Peña on December 20th, and perhaps the 12th, was sufficient to put Home Depot on notice and trigger its duty to investigate whether Ames was entitled to FMLA leave. *See Burnett v. LFW, Inc.*, 472 F.3d 471, 478-80 (7th Cir. 2006).

That the issue of notice may present a genuine issue of material fact does nothing to satisfy the fifth element of Ames' prima facie case, however. The fifth element addresses whether Home Depot denied Ames FMLA rights to which she was entitled. As elaborated above, Ames was not entitled to any benefits under the FMLA that Home Depot could have refused. Having failed to establish a prima facie case, summary judgment is appropriate as to Ames' FMLA interference claim.

### B. FMLA Retaliation

Ames also claims that Home Depot terminated her in retaliation for her exercise of FMLA rights. In an FMLA retaliation charge, a plaintiff may proceed under the direct or

indirect methods of proof. *See Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 593 (7th Cir. 2008). Because Ames has not identified a similarly situated person treated more favorably than she in requesting FMLA leave, she must proceed under the direct method of proof. *See Caskey*, 535 F.3d at 591.

Under the direct method, Ames must present evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two. *Caskey*, 535 F.3d at 591 (quotations omitted). Upon a establishing a prima facie case, the burden shifts to Home Depot to produce evidence that it would have taken the adverse employment action regardless of a retaliatory motive. *Id. Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). If Home Depot meets this burden, Ames must demonstrate that the company's proffered reason is pretextual in order to avoid summary judgment. *Id.*

As with her interference claim, Ames is unable to meet the first element of a prima facie case, in that she did not engage in statutorily protected activity. Because there is no evidence that Ames suffered from a serious medical condition as defined by the FMLA, Ames is not entitled to any rights under the Act.

At any rate, the "adverse employment action" Ames complains of is the execution of her drug alcohol test, not her termination. (Doc. [39] at 11) ("Peña sent Diane for a blood test *because of* her request for FMLA leave. . . a reasonably jury could conclude that Peña sent Diane for a blood alcohol test *because* she admitted to him that she was an alcoholic and needed medical leave to treat her alcoholism."). However, the Seventh Circuit has found that a drug test does not constitute an adverse employment action unless it "is not performed in a routine fashion following the regular and legitimate practices of the employer, but [rather] is conducted in a

manner that harasses or humiliates employees." *Keys v. Foamex*, 264 Fed.Appx. 507, 510-11 (7th Cir. 2008) (examining a Title VII claim).

Ames argues that the drug alcohol policy was unfairly enforced and disputes the facts supporting Peña's decision to order a blood alcohol test, asserting that she never interacted with Assistant Store Manager Eric Gray prior to Peña's decision. Under Home Depot's general policy, an employee can only be sent for a drug/alcohol screen for "reasonable suspicion," which requires the combined observation of two salaried managers. (Pl. SOF ¶ 30, Def. Response.) However, Ames' Employee Assistance Agreement plainly states that "I will be subject to periodic drug and/or alcohol testing during the remainder of my employment at Home Depot *whether the Company has reasonable suspicion or not* to believe drug or alcohol abuse occurred at work or has affected my work performance." (Ex. 7) (emphasis added).[5] Given Ames' status as a post-rehabilitation employee, normal procedure was routinely and fairly followed: Human Resources and Ames were notified; Ames was immediately sent to a collection facility on a scheduled workday and paid for her time; because she appeared to be under the influence, she was driven to a testing facility; and Ames was terminated for a confirmed positive test result. (Ex. 21 at 2-3; Ex. 13; Peña Dep. 119-22.)

The adverse employment action that Ames should challenge is not her blood alcohol test, but her termination. For that, Home Depot has presented evidence that it would have taken the adverse employment action against Ames regardless of her request for leave, because her test results came back positive.[6] *See Miller v. North American Lighting*, No. 07-CV-2195, 2009 WL

---

[5] As Peña appeared to be unaware of the terms of Ames' EAA, he mistakenly believed that he needed reasonable suspicion to send Ames in for an alcohol test. (Peña Dep. 132-134.) Yet, this only afforded Ames more protection, not less, as Peña thought that he needed the corroborating observations of another salaried manager in order to proceed. Ames seeks to hold Home Depot to Peña's erroneous standard, (Pl. SOF ¶ 30), but the Court cannot ignore the clear terms of her EAA.

[6] Ames argues that the test results were flawed because she was called in to sign her certification statement five days after her test. (Pl. Dep. 251-54; Ex. 15.) This administrative issue has nothing to do with the test's accuracy. Had

741942 (C.D. Ill. Mar. 19, 2009). As Ames' EAA states, "If I refuse . . . or fail a drug and/or alcohol test at any time during the course of my employment at Home Depot, I will be immediately terminated." (Ex. 7; Def. SOF ¶ 19). Ames offers no relevant reason why Home Depot's proffered reason is pretexual.[7] Having failed to establish a prima facie case, Ames cannot avoid summary judgment on her FMLA retaliation claim.

## II. ADA Claim

The Americans with Disabilities Act ("ADA") prohibits employment discrimination "against a qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a); *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 601 (7th Cir.2009). An employee may present either direct or indirect evidence of employer discrimination. *Pugh v. City of Attica, Indiana*, 259 F.3d 619, 625 (7th Cir. 2001). When relying on indirect evidence, as Ames does here, a plaintiff must establish a prima facie case of discrimination under the *McDonnell Douglas* burden-shifting framework. *See id.* at 601. The analysis is identical to that of Ames' FMLA retaliation claim: once she establishes a prima facie case, the burden shifts to Home Depot to provide a legitimate, nondiscriminatory reason for its employment action. If that burden is met, Ames must offer evidence showing that the defendant's proffered reason is merely a pretext for unlawful

---

Ames refused to sign the certification form, analysis of her blood sample would have proceeded nonetheless. According to routine procedure, the collector simply would have noted the refusal in another form before delivering the sample. (Ex. 14 at 4.) Any implication that Home Depot otherwise tampered with Ames' blood alcohol test to achieve a false positive has no evidentiary support.

[7] The accuracy of the test has no bearing on Ames' claim; what matters is whether Home Depot actually believed the test result, or merely used it as a lie to obscure a retaliatory motive. *See Miller*, 2009 WL 741942 at *8 (quoting *Burks v. Wis. Dept. of Transp.*, 464 F.3d 744, 754-55 (7th Cir. 2006) ("an employee's attempt to avoid summary judgment cannot succeed unless the employee puts forth evidence suggesting that the employer itself did not believe the proffered reasons for termination.")) Because the administrative issue had nothing to do with the substantive test results, Ames has not shown that Home Depot had any reason to disbelieve the test result. *See id.* (rejecting plaintiff's argument that employer's decision to fire him for a positive drug test was pretextual because the company did not follow its written drug and alcohol policy).

disability discrimination. *Id.*

To establish a prima facie case of discrimination, the plaintiff must show that she (1) is disabled, (2) is meeting her employer's legitimate employment expectations, (3) suffered an adverse employment action, and that (4) similarly situated employees without a disability were treated more favorably. *See Lloyd*, 552 F.3d at 601. The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g). The "substantially limits" clause describes an inability to perform a major life activity that the average person in the general population can perform, or a significant restriction as to the condition, manner, or duration under which the average person can perform the same major life activity. 29 C.F.R. § 1630.2(j)(l)(i)-(ii); *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 937 (7th Cir.2007). Major life activities include, for example, caring for oneself, performing manual tasks, seeing, eating, sleeping, walking, thinking, communicating, and working. 42 U.S.C. § 12102(2)(A). Assessment of a disability involves "the nature and severity of the impairment, the duration and expected duration of the impairment, and the permanent or long term impact or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2)(i)-(iii); *Furnish v. SVI Sys., Inc.*, 270 F.3d 445, 451 (7th Cir. 2001).

Having broached this topic twice, the Court need not reproduce in detail its examination of the record. Suffice to say that Ames' Rule 56.1 admissions, testimony, and the record reveal no indication that Ames' alcoholism substantially limited one or more of her major life activities. To the contrary, Ames admitted that her alcoholism neither incapacitated her nor affected her work performance. (Def. SOF ¶ 79); *see also* (Doc. [39] at 14). Ames further testified that "my performance never dropped," (Pl. Dep. 107), "[m]y work wasn't affected," (Pl. Dep. 106-07),

and that her alcoholism did not incapacitate her, (Pl. Dep. 107, 129). Medical evaluations attesting to any limitations are absent from the record. Even after drawing all reasonable inferences in Ames' favor, the Court cannot find a genuine issue of material fact as to whether her alcoholism substantially limited a major life activity.[8] *See Burris v. Novartis Animal Health U.S., Inc.*, No. 08-6030, 2009 WL 175078, at *10 (10th Cir. 2009); *Burch v. Coca-Cola Co.*, 119 F.3d 305, 314-17 (5th Cir. 1997); *Radant v. Election Systems Software, Inc.*, No. 08-C-7102, 2009 WL 3366969, at *3-4 (N.D. Ill. Oct. 14, 2009).

By returning a positive blood alcohol test, Ames fails to satisfy the second element of a discrimination claim, as well. Home Depot legitimately expected Ames to arrive at work without alcohol in her system, as detailed in both Ames' EAA, (Ex. 7), the company's Drug and Alcohol Rehabilitation Policy, (Ex. 21), and the company's zero-tolerance alcohol policy, received by Ames (Def. SOF ¶ 8-10; Ex. 3 at 5) ("Having detectable levels of alcohol, drugs, or non-prescribed controlled substances as determined by a drug/alcohol test" is a "Major Work Rule Violation" which is terminable upon first offense.). *See* 42 U.S.C. § 12114(c)(4) (employer may hold alcoholic employee to same performance standards as other employees "even if the unsatisfactory performance is related to the . . . alcoholism of such employee."). Because Ames failed to meet her employer's legitimate expectations, she cannot establish her prima facie case. *See Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 548 (7th Cir. 2008).

Even assuming that Ames had established these elements, her ADA claim would have met the same end as her FMLA retaliation claim. For the reasons stated earlier, Ames has failed to show that Home Depot's proffered reason for terminating her – the positive test result and violation of her EAA – was pretextual. *See Marrari v. WCI Steel, Inc.*, 130 F.3d 1180, 1182-83

---

[8] The Court also notes that it finds no evidence of any record of such an impairment, nor that Ames was regarded as having such an impairment by Home Depot. *See* 42 U.S.C. § 12102(2); *Bekker v. Humana Health Plan, Inc*, 229 F.3d 662, 670 (7th Cir. 2000).

(6th Cir. 1997) (termination for failing a urine test, where a "last-chance agreement" requiring immediate termination upon failure, did not violate the ADA); *McKey v. Occidental Chemical Corp.*, 956 F.Supp. 1313, 1318-1319 (S.D. Tex. 1997) (termination for violating a Return to Work Agreement, in which employee agreed to remain abstinent or face immediate termination, did not violate the ADA); *Nelson v. Williams Field Services Co.*, 216 F.3d 1088, 2000 WL 743684, at *4 (10th Cir. 2000) (unpublished disposition). Defendant is therefore entitled to summary judgment on Plaintiff's ADA claim.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment on Plaintiff's claims under the Family Medical Leave Act and Americans with Disabilities Act is GRANTED.

Enter:

/s/ David H. Coar

_____

David H. Coar
United States District Judge

Dated: **December 2, 2009**